District Court. My name is Richard Gress, and I'm representing Plaintiff's American Beverage Association in the hall. I'd like to reserve as possible three minutes for rebuttal, if that's okay with you. District Court in this case denied the plaintiff's motion for a preliminary injunction, despite having found a close constitutional question and a likely decision on the merits. That decision should be reversed for four different reasons, independently. Number one, the court should have applied a heightened scrutiny of the lesser standard of scrutiny under Zeller. There's no application to laws like the Ordinance that grant a light, fully protected, juridical speech. Number two, even if Zeller were in a broader range, he wouldn't apply here, because the compelled speech here is not purely factual, and no Number three, under any standard of scrutiny, the nearly unprecedented size and severity of this warning would be an undue burden. Number four, given the close constitutional question and the burden on speech, in the context of this case, a preliminary injunction should be granted in any event. I'd like to start with number one, if I may. I'd like to ask you about Zeller. Once Zeller applied to all the soldier laws, isn't the protected interest lesser when a law amends to soldier than when it restricts certain speech altogether? No, Your Honor. In fact, as the court said in O'Reilly, the interest is generally the same over the original protected speech. The interest is the same whether you're being compelled to say something or whether you're barred from saying some things. Zeller was under the jurisprudence of RMJ. So if you look at RMJ, which is directly preceded by Zeller, RMJ divides speech into three different categories. First, you've got misleading speech, and here it is. That can be banned entirely. Secondly, you've got potentially misleading speech. The court said that rather than banning it entirely, a less restricted means of dealing with it is a disclosure law. Third, you've got what the protected speech, non-misleading speech. The court said regulations of that have to live up to the central observance. Zeller comes next. Zeller doesn't purport to question that third category. Zeller was dealing with, okay, we're in the first or second category of misleading or potentially misleading speech. How do we judge a disclosure that's been signed to a whole lot of sense, lesser scrutiny, when you're talking about their contents? For example, the court says there's minimal interest in not making the disclosure. Well, that's true if your underlying speech is confusing or misleading consumers. You've got minimal interest in refusing to make a statement that would clarify it and prevent consumers from being misled. It's not true when your underlying speech is protected and truthful speech. There is not quite a strong interest in unburdening that speech with just something else that the government wants to say. Our sister circuits don't seem to agree with you, though. Your Honor, four of your sister circuits don't agree. With respect, we think that they fail to understand Zeller in context and really to apply first principles to it. The decision that we would point to as the third circuit's decision in Dwyer, while it doesn't end up having to reach a conclusion, its analysis is the same as the analysis that I'm drawing on here. The other factor, I think, that you should look at when you're saying should Zeller be extended, because I think that's what it would be doing to fully protected speech, is that when you're talking about deceptive speech, there's no doubt there that the government's use of the disclaimer to clear up the deception is going to have a very tight fit with the problem, because it's the underlying speech that's causing the problem. When you're outside of that and you've got a fully protected truthful speech that the government simply wants to attach or piggyback onto that in its own speech, there's no similar guarantee or presumption that you're going to have to use Zeller. So an American lead in the D.C. circuit said, well, we think Zeller is the same as Central Hudson. I don't know how they got there, but that's what they said. And they said it's fine to require a disclosure of the county of origin or the country of origin, which seems to have nothing to do with anything really. And the other circuits, maybe Dwyer is an exception, but the other circuits seem to say disclosure is not related to correcting deception is fine. And, Your Honor, I agree that the other three circuits, I think it was the first circuit, second circuit, and there's one more other than the D.C. circuit, where the D.C. circuit is a bit of a hybrid, as Your Honor suggested. The D.C. looks for a substantial interest, which is where Central Hudson, the D.C. circuit, looks for a significant interest. It's not really interested, and neither does Judge Kavanaugh in his concurrence. The Supreme Court has addressed it since I appoint this Court to the Supreme Court's decision in Millivance. In Millivance, on page 249, where the Court's deciding what level of scrutiny to apply, it brings up that speech of the ordinance before it is one aimed at misleading speech. And actually, I tell us this is misleading. It says, for that reason, lower standard of Zadar will apply. And then on the very next page, on 250, the Court points up what it calls the two essential features of the rule in Zadar, the rule that was being challenged in Zadar. And one of those two essential features is that it was aimed at misleading speech. The other one was that it required only factual and uncontroversial disclosure. So the Supreme Court itself will do this address, but it has kept Zadar in that box. Also, if you look at United Foods. Let me just ask you this. Is there a Supreme Court case we could reach a proposition that when it's not a deceptive context, and yet a disclosure is being required, we use another standard? What's the case for that? The closest you comment, Your Honor, it's not perfect. That point is United Foods. United Foods, as this Court will recall, had to do with a forced subsidy by producers of mushrooms of speech that would promote mushrooms. And the Court rejected the notion that Zadar would apply, saying that this speech is not required in this case to address deceptive underlying speech. Well, wasn't it that they were members of a group that may have no option dot that? It seemed it was more of a, like the Bar Association needs for political. That's why I'm saying it's not perfect, Your Honor, but it does address Zadar. It says Zadar doesn't apply because this law is not intended to remediate deceptive speech. I think that's the closest. I think there's, of course, a first principle here, which is that, you know, when you're talking about fully protected, truthful, coercive speech, the Court already requires, of course, a somewhat lower scrutiny, whether it's heightened scrutiny or poor centralization scrutiny or RDN scrutiny than strict scrutiny. That's already taken into account if you lower it further still simply because the government's interfering by putting a burdensome disclosure requirement as opposed to interfering by making you be invited to speak or some other form of interference. Then you're double-counting there and you're exaggerating the difference that the Court has ever found between coercive and non-coercive speech, in ways that rightly, of course, told us not to. If I may move on. Yes, sir. I guess the answer to this question is Zadar does apply. What size of a warning would not be a duty burdensome? Well, Your Honor, it's hard for me to define what size would not be a duty burdensome. What we know here is that we've got a nearly unprecedented size at 20% of the page. If you look at pages 47 and 48 of our opening brief, you get a sense of what it does to our advertisements. It's in a big black box. It says, Warning to All Computers. And it warns of trials and arrests, that it's possible to have diabetes, for example. There's no doubt that this warning is a duty burdensome. There's no doubt that it is interfering with the speech that we're trying to get at. There's no doubt that the disclosure of speech is a duty burdensome. Yeah, well, then I'd interfere. Here's what you're trying to settle. Your Honor, there may be warnings that are small enough that they wouldn't interfere. The question that might occur is, would they be full enough story to matter? Because one of the problems we've got here as well is that the warning is misguided by mission. The warning simply says, and this is one of the reasons some of the facts are a little controversial, the warning just says, Drinking sugar-sweetened beverages contributes to obesity, diabetes, and tooth decay. The problem there is that it's not true. Unless your overall caloric intake, counting the sugar-sweetened beverages, better if it helps, is more than your overall caloric expenditure. You're listening out there. It looks quite minor, but I think the dispositive characterization is getting the dispositive factor. So what that means is that for most Franciscans and most Californians who drink sugar-sweetened beverages, the warning is actually false, because it won't contribute, because overall they're not taking in more calories than they're expending. If you look at the short of the other foot here, this was someone trying to promote a product. Let's say they were promoting a diet aid, and they said this dietary supplement aids increasing weight, but didn't tell you that's only true if overall you're taking in fewer calories than you're expending. That would no doubt be misstated, and the government shouldn't be able to require us to make speech that would be false speech, that would be an awful speech made by a producer. Secondly, this warning is also misstated because it's misleading in a comparative sense by focusing only on sugar-sweetened beverages, by saying that it is the drinking of sugar-sweetened beverages that contributes, by only requiring this warning on sugar-sweetened beverages. It necessarily is telling consumers, beverages with added sugar are bad for you. And it's sending a comparative message that beverages with natural sugar, they are not as bad for you, the other items that make donut sugar all but unlock calories are not as bad for you. If you picture somebody in a grocery store aisle, walking down the aisle, they see a huge warning, warning them of dangers from these products, but not with others. If there's no doubt. So, normally, I mean, for a rational basis, rational review, whatever it is that Zelda or Jessica is likely to disagree about that, other inclusiveness would not work, but you're saying, you're going to different distinctions, I understand that. I'm not going to, thank you, Your Honor, I'm going to completely different distinctions. The distinction that Your Honor is referring to is essentially the usual under-inclusiveness that goes into either a rational relationship. What I'm talking about is a form of under-inclusiveness that, by its very nature, makes the speech misleading. And misleading, in your view, equals not being factual. That's exactly right. If it's misleading, that'll keep you even closer to being factual about a controversy. The irony is, over time, people keep seeing these advertisements that focus solely on these sugary beverages. The mic that is being turned into their uniquely harmful as opposed to M&M's or ice cream or some other kind of sugar. That's exactly right, Your Honor. And our expert, Professor Golder, explains that in two different terms. But I don't even think you need to get too technical to realize that that's how it's going to be taken. And, of course, the standard here is not just here for you to consume, or you have to read it that way. If you look at what the Publishing Bureau, four years after, decided that the attorney's speech in September was deceptive or misleading when they said substantial numbers of consumers would be misled, that's really all that the standard that should apply here, would substantial numbers of consumers reasonably be misled. We think in both ways. And my time on this is closing on it. I was going to get into undue burden. I'd like to reserve my remaining time for a couple of minutes and introduce the topic. Thank you. Good afternoon, Your Honors. It pleases the Court. I'm Christine Denning, and I'm here representing the city and county of San Francisco. A single 20-ounce serving of soda, Coke or Pepsi, contains about 16 teaspoons of added sugar, more than the entire base allowance that the FDA recommends for added sugar. And even for a 12-ounce can, it still exceeds that recommended allowance for many children. And for people who are obese or at risk for obesity, which is two-thirds of American adults, the clinic's own expert says that his top recommendation for what that person should do is reduce consumption of added sugars because they're just excess calories, they're empty calories. Whether it's soda or not. Right. But here's my point. Soda is the single largest source of added sugar in the American diet. That's about 39%, right? Yes. Yes, roughly. So there's an extra 61% of the result.  The government isn't, of course, required to attack all sources of a problem before it attacks any other. So the argument they're making is that it's misleading to make a statement that singles out one average child. The under-inclusive argument I understood together with why aren't you targeting all media but only one type of media. That seems to go with a piece, maybe you don't have to do everything all at once. But there is the unspoken reasonable inference that if averages are targeted, other things are not as dangerous. And so could you address why it's not misleading? Yeah, so I don't think it's misleading because there are essentially two claims that the plaintiffs make, right? One is the inevitability claim that anybody who drinks this product is going to get health harms. In other words, you can't consume it in moderation. And the other one is the uniqueness claim. And I think your question, Judge Akuda, was directed at the uniqueness claim. The reason the city that started with sugary beverages is because there's wide consensus that this is a leading contributor to the obesity epidemic. We've got expert reports from Dr. Hammond and Dr. Sollinger on the record. The district were credited that evidence. This is a preliminary injunction where its factual findings are of deference. Moreover, there's no other product that is marketed and sold the same way where a single serving puts you over this daily limit. I don't think I drink enough ice cream to take me over. Well, most people don't drink, don't have a bowl of ice cream with every meal. But that's how sodas are marketed. That's the intended consumption of sodas based on its marketing. So if sodas were marketed as an occasional treat, but they're not, they're marketed to refresh your thirst, quench your thirst. And so because they're marketed as if they were water, and because many people consume them as if they were water, then the city has singled that out. And so if people read the warning and take away the message that I should be particularly careful about this product, that is not misleading in light of the evidence that the city is putting on record about the extent to which these products, in particular, are over-consumed. But what if there's a rule that said all, I mean, some degree, there's some mention of rollovers and SUVs, but what if there was some rule that all foreign car manufacturers had to have some warning that their SUVs are subject to rollover, increased risk of death, but American manufacturers don't have that? Yeah, I don't see a rational basis for making that distinction. Well, but they're seen on a daily basis. Yeah, I think that would be unconstitutional. I mean, there's no rational basis for distinguishing between those products, but there is a rational basis for singling out sugary beverages because it is the single eating source of added sugar in the American diets, and because of the way it is marketed and consumed in the real world. And as to the point that it's misleading, because not every person who drinks sugary beverages is going to become obese or diabetic or be in tooth decay, I think that also doesn't go anywhere. I mean, the federal government requires health warnings on alcoholic beverages. For example, it says on one of the warnings is that out drinking and consuming alcohol may cause health problems. Well, that's not true for a lot of people who have a glass of wine with dinner. Let me just make sure. I'm sorry if I'm interrupting. I'm just trying to understand the argument. So you're saying even if it's misleading as to the beverages, because let's just say that the argument is, it says that beverages contribute to diabetes and whatever, and you leave out two points. One point is it's over-consumed, and the other point is that other sugary products also will contribute if eaten to excess. You're saying the way they're marketed or the way they're used makes whatever misleading feature of it? Okay. I don't think it's misleading at all. I think people are correct in being uniquely concerned about sugars to the extent that people take for the message, I should worry about this in particular. I don't think that's misleading because they are the single largest source of information. Well, uniquely concerned is different than saying actually uniquely contributed to these diseases. Yes. So I understand there's some argument that this controversial that sugary beverages do uniquely cause these health problems. But you're not arguing that if I understand you. I am not arguing that. So it's not that they don't, even if they don't uniquely cause beverages, because of their prevalence in American society and use, there is a sort of warning. I think the warning is not misleading because of the use, not because of the actual nature of the drink. That's right. The warning doesn't make claims about the actual nature of the drink. The warning tells people that they should be concerned when they drink soda, when they choose to drink soda, they should undertake that with special caution because of the contribution soda and other sugary beverages makes to these diseases. Now, it may be also the case that you could over-produce more ice cream to the same extent. And if we had an epidemic of over-consumption of ice cream, that we could also maybe a warning on ice cream as well would be merited. But in the real world, the city's evidence demonstrates that it is sodas that are the second or third largest source of calories, bar none, no other foods for certain categories of children. So in the real world, sodas are the problem. And the city does not mislead the public when it tells them that in the real world, sodas are the problem. So how the city tells them, and I'd like to move to the, it's a new word, shortiness, the size, 20% of its advertisers. I have a mother. I go down there and I see the warning, you know, being misleading in a way, it takes away from the advertisement. What about the other part of the argument? Yeah, so certainly 20% is actually not unfortunate. For drug ads, for instance, about half of the content, you have to spend an equal amount of time talking about. Isn't that different? I mean, I thought the district court relied on tobacco. Tobacco is physiologically addictive. Pharmaceuticals are usually prescribed by a doctor. I mean, it just didn't seem to be comparable to a food item, so I didn't find that very persuasive. So two points about that. I mean, it's true that I don't have another food item that I can point to that has had a warning like this. I also don't have another food item whose overconsumption has had such dramatic health effects as the declarations of sugar and will it substantiate. But in that, I think it's important. I think the answer to Judge Nelson's question to my colleague is actually really important here because Judge Nelson asked what size of warning would be appropriate, and we didn't really hear a direct answer to that question. And I think in view of what answer comes, and I think it's page 47 of the reply brief, sorry, page 26 of the reply brief, that's where plaintiffs really say, and they almost admit that there's no warning on an ad that would pass muster in their view because they say that, well, labels or point of purchase, notifications like in a store next to a cash register, that's my example rather than theirs, that labels are point of sale, disclosures could pass muster. In their view, there's nothing on an ad that could pass muster. They do have cases, though, where the Supreme Court, in Ibanez, according to another case, said, look, the requirement for disclosure basically prevents the speaker from sort of doing half the way they want to because it's too big. So the Supreme Court didn't say this would be okay, but it says that they just said this here is too big, and that's what I hear the opposing counsel say. This here is too big. I'm sorry, Your Honor. What they said in Ibanez, though, was that it was so big that it was effectively ruled out advertising in the yellow pages on a business card, putting a certified financial plan or designation on letterhead, and that's not what we have here. In fact, the closest case is the discount tobacco case where the Sixth Circuit was looking at it, and I believe it was a 30% requirement, and it said there's ample room for you to counterspeak. You still have enough room to convey your message, and that was a tobacco case, of course. So they have an affidavit saying it will chill our speech. We will not do these billboards. And the district court said, well, I don't credit that, but I'm not sure that's appropriate to make that sort of credibility determination in the absence of, you know, an evidentiary hearing or whatever. So let's assume that you take the affidavits on today's value. Does that make it the same as Ibanez ban Thursday? If we have to have this huge awarding, we won't advertise in this media. I don't think it is the same, Your Honor, because in Ibanez, it was effectively ruled out. It was physically impossible to get the disclosure that was required onto a business card because the disclosure that was required there was not only the nature of the certifying organization, but also what its criteria were for issuing a certification. It's too big only if it physically required concludes that. No, no. I'm saying that's the only guidance we have from the Supreme Court. But what we have from Dr. Heumann is a declaration that says that a awarding has to be big enough to be effective. If it were, you know, five persons, well, that's only at the awarding, but we're looking at the speech. Right. So our perspective is, is this a burden? Yeah. The First Amendment rights of the speaker. Well, can we return to Zouder? Do you answer that question? Because what Zouder tells us is that we realize the reason why commercial speech is protected in the first place is because it conveys facts to the consumer, not because it conveys, like, a brand image or because it's expressive or because it's – No, that's a different attitude. And I would say undermine that, but at least maybe shift the focus a little bit to the advertiser and what their position is. Yes. But United Foods has followed up with Yohannes, and United Foods says, yes, there's this interest. The advertiser must want to subsidize this. Now, they weren't just talking about factual disclosures in United Foods. They were talking about consumer commercial speech more generally. But Yohannes, just a couple of years later, says that as long as the government is behind the speech so that it's not attributed to the people who are speaking and would rather not speak, then that concern is entirely allayed. And in Yohannes, because it was essentially the same set of facts, but the speech was attributable to the government in Yohannes, no constitutional problem. And that's essentially the same here, because San Francisco says, this is a message from the city and county of San Francisco, so there's no risk that people are going to believe that Coca-Cola wants to be making this speech or endorsing this message. But let me return to this outer point, because I think it's important. The court said in Zouder that because commercial speech is valuable, because of the information it conveys, it is a listener focus rather than a speaker focus projection, that an advertiser's interest in not conveying any particular factual information is minimal. And so I think here, there is very little interest in sharing space with a message that you might prefer that your customers not be reminded about the health effects of their product. Does it protect? Is it chilling? Because the argument for one of the arguments you're making is that it has a chilling effect, and that is the concern that the Supreme Court expressed in Zouder in other cases. Well, in Zouder, the court said, there's chilling, but we hold that the advertisers' interests are protected as long as there's a reasonable relationship. So the Sixth Circuit, for instance, and the Second Circuit have treated reasonable relationship as a task and chilling just as an illustration. But even if you take it as a task, it would be a very strange reasonable relationship, rational basis type test that lets an advertiser essentially veto a regulation by putting in a reinforcement declaration and saying, I'm going to change my advertising practices. Moreover, I don't think that the digital court simply discredited the advertiser's declarations. I think it had more than that in what it had, where it had declarations on the billboard, the billboard association, and also the report of Dr. Hammond that said point-of-sale advertising is particularly important. What we rely on is they were self-serving, and that would be right. We look at a declaration. I know I don't as a district court judge, because I look at a declaration and just say, because it's self-serving, I discredited it. Because almost every declaration is self-serving. I don't think that's what the district court did. I think the district court relied not only on the fact that the declaration didn't say much, we'll just switch our advertising, and also that they were self-serving, but also that they were contradicted by other information in the record, such as the description of the value of billboards, and also the fact that in the tobacco experience at least, that's not what we've seen at all. In fact, in the consolidated CR case, the First Circuit rejected a very similar assertion that CR companies would no longer advertise if they were forced to display the warning. And it said, well, you know, we don't really buy that, because tobacco companies have been subject to a warning requirement on their ads for 40 years, and tobacco advertising hasn't gone away. So those are the pieces of the district court's reliance, and I think that that's a non-obvious assertion. So I do want to circle back to the fact that the circuits are uniform, that many interests can justify a disclosure requirement, only that now the world of American DC Circuit jurisprudence is held otherwise. Other circuits that may have cited for that simply haven't had occasion to consider it. So the circuit should be the first outlier. Thank you. Thank you. I may start with Jim. First of all, it's been clear that the burden of proving that the government falsely sees the government has introduced no evidence whatsoever, according to the speech from the agent. But the evidence here will first tell you about the government's assertion on page 14. So go to the content of your brief below, where they said any rational advertisers will always shift in speech at least to some extent. Secondly, you've got the testimony of our predecessor, Hammond, whose expertise is branding and advertising. And he said, of course, given that you can still advertise on television, radio, magazines, newspapers, certain news, you're going to shift into the other. You've got the obvious fact when you're looking 47 or 48 that this is what got your mind, and it's going to have that effect. And the fact that the advocates came in here and confirmed that, yes, indeed, that's what they'll do if they have to, is really the icing on the cake. There's no basis in the court to find out. That's why it's a really subjective test, right? I mean, it can be strong courting, so apply the enforcement advice. There certainly can be cases where a judge can come in with an affidavit that just doesn't even pass the range test, Your Honor. But here it passes with flying colors because they say there's no evidence of the other side. Tobacco, of course, is a completely different circumstance. There you've got the choice between not advertising at all and advertising. Here we've got the choice between advertising in a diversified way that maximizes our goals, including billboards and signs. But if those are being weighted down, if those are being weighted down by messages that undercut them, we've got the obvious way off of that. And it's sort of obvious that we would in the directorate of courts. And when we get into misusing speech, as before, the city said that the district court gets deference. That's not true. In the Peel case, the Supreme Court held clearly that their speech is misusing. It's a question of de novo, refused in court. What the city is really arguing is that there's a behavioral problem and many people are misusing this product as they misuse other products. And, therefore, we've got a reason to accept it. The problem is the wording doesn't talk about behavior. It doesn't talk about overconceptions or other things. It signals how this product is empirically more dangerous, metabolically more dangerous, and that's misleading. Thank you. We are adjourned for the afternoon.
judges: D.W. Nelson, Ikuta, Seabright